**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 26-cv-21888-BLOOM/Elfenbein

SHIR KARMON,

Plaintiff,

v.

ATTORNEY GENERAL OF THE UNITED STATES; DIRECTOR OF U.S. CITIZENSHIP AND IMMIGRATION SERVICES; U.S. SECRETARY OF HOMELAND SECURITY; U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS"),

Defendants.
_____________________________/

**ORDER ON MOTION DEFENDANTS' MOTION TO DISMISS COMPLAINT**

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss Complaint for Failure to State a Claim Upon Which Relief Can be Granted, ECF No. [11] ("Motion"). Plaintiff Shir Karmon filed a Response, ECF No. [12], to which Defendants filed a Reply, ECF No. [13]. The Court has reviewed the Motion, the supporting and opposing submissions, the record, applicable law, and is otherwise fully advised. For the reasons that follow, Defendants' Motion is granted.

## I. BACKGROUND

Plaintiff was born on October 4, 1990 in Ramat Gan, Israel. ECF No. [1] ¶ 23. He is a naturalized United States citizen and a commercial pilot for American Airlines. *Id.* Plaintiff's father, Yoav Karmon, a/k/a Yoav Kerman ("Yoav"), was born on October 4, 1959 in Israel. *Id.* ¶ 24. He was born to a U.S. citizen parent, Gitle Shapiro, a/k/a Hagit Karmon ("Gitle"), who was

born in Passaic, New Jersey, on January 12, 1934. *Id.* Plaintiff's father, Yoav, was issued a Consular Report of Birth Abroad ("CRBA") based on his mother, Gitle's, U.S. citizenship and physical presence in the United States. *Id.* ¶ 25. Yoav is a U.S. citizen by birth abroad. *Id.*

On June 14, 1988, Yoav married Michal Domb a/k/ Miki Karmon ("Miki"), a non-U.S. citizen. *Id.* ¶ 26. Yoav and Miki had three children born of the marriage in Israel: Plaintiff Shir Karmon, born on October 4, 1990; Tal Karmon, born on March 31, 1993; and Ofri Karmon, born on October 5, 1999. *Id.*

Around 2016, Yoav first became aware of the 8 U.S.C. § 1433, which allows a U.S. citizen parent to apply for U.S. citizenship for a child born and living outside the United States, based on the physical presence in the U.S. of the U.S. citizen grandparent—in this case, Gitle. *Id.* ¶ 27. Prior to 2016, Yoav was wholly unaware that he could apply for U.S. citizenship for his children under § 1433. *Id.* ¶ 28. As soon as Yoav became aware, he promptly, diligently, and in good faith, began the process of gathering documents needed for U.S. citizenship for his son, Ofri Karmon. *Id.* ¶ 29. He wished to apply for U.S. citizenship for all three of his children, but Plaintiff and his brother, Tal Karmon, were already over the age of 18. *Id.* ¶ 30. As a result, Yoav only filed for Ofri Karmon, and he submitted an application on May 1, 2017. *Id.* ¶¶ 30–31. On July 17, 2017, Ofri Karmon was issued a Certificate of Citizenship pursuant to 8 U.S.C. § 1433 based on his father Yoav's U.S. citizenship and the physical presence in the U.S. of his U.S. citizen grandmother, Gitle. *Id.* ¶ 32.

Plaintiff and his brothers, Ofri and Tal Karmon, are biological siblings who share the same citizen father and U.S. citizen grandmother with qualifying physical presence in the U.S. *Id.* ¶ 33. But for the fact that Plaintiff and Tal Karmon were over the age of eighteen when Yoav became

aware of § 1433, both Plaintiff and Tal Karmon would have obtained U.S. citizenship in the same manner Ofri Karmon did in 2017. *Id*.

Plaintiff alleges that prior to age 18, he complied with the statutory requirements of § 1433—specifically, Plaintiff is the biological son of a U.S. citizen abroad; Plaintiff's paternal grandmother, Gitle, met the statutory physical presence requirement in the U.S.; Plaintiff resided outside the U.S. in the legal and physical custody of his U.S. citizen father, Yoav, from birth until the age of 18. *Id.* ¶ 34. But for Plaintiff's father's unawareness of his ability to apply for a Certificate of Citizenship on behalf of Plaintiff while Plaintiff was still under age 18, Plaintiff would have been issued a Certificate of Citizenship pursuant to § 1433. *Id.* ¶ 35. The sole barrier to compliance with the age requirement was the lack of awareness by Plaintiff's father. *Id.* ¶ 36.

On January 20, 2021, Plaintiff filed his first Form N-600 Application for Certificate of Citizenship ("Form N-600") with the United States Citizenship and Immigration Services ("USCIS"). *Id.* ¶ 37. He filed *pro se* and withdrew that Form N-600 in January or February 2021 because of confusion and misunderstanding regarding the applicable law and lack of knowledge regarding the doctrine of unawareness. *Id.* ¶ 38. On September 10, 2024, Plaintiff filed a Form N-400 Application for Naturalization with USCIS. *Id.* ¶ 39. On February 26, 2025, Plaintiff filed a Mandamus Action seeking judicial intervention on that application. *Id*. On March 22, 2025, after Plaintiff learned about the doctrine of unawareness, Plaintiff filed his second Form N-600 and invoked the doctrine of unawareness by his father. *Id.* ¶ 40.

On or about July 1, 2025, USCIS issued a Notice of Continuance regarding the Form N-600 and requested additional evidence regarding Plaintiff's father's physical presence in the United States, referencing statutory provisions different from the statutory basis of Plaintiff's Form

N-600. *Id.* ¶¶ 42–44. That is, Petitioner's Form N-600 sought a certificate of citizenship based on § 1433, not the two statutory provisions referenced by USCIS. *Id.* ¶ 45.[1]

In July 2025, Plaintiff's Form N-600 was denied by USCIS, with USCIS indicating that Plaintiff's assertion of the doctrine and defense of unawareness was not evaluated or taken into consideration when adjudicating the application. *Id.* ¶ 46. The denial letter described the grounds for denial as including Plaintiff's prior United States visas, Plaintiff's withdrawal request of his first Form N-600, and errors in Plaintiff's prior permanent residence card. *Id.* ¶ 47. The denial letter did not address Plaintiff's Claim for a Certificate of Citizenship after age 18 because Plaintiff lived in the United States at the time of application. *Id.* ¶ 48.

In July 2025, Plaintiff filed an appeal of the denial of his Form N-600. *Id.* ¶ 49. In September 2025, USCIS approved Plaintiff's N-400 Application for Naturalization, and he was issued a Certificate of Naturalization. *Id.* ¶ 50. In February 2026, Plaintiff's appeal was dismissed because he was over 18 and residing in the United States at the time of application. *Id.* ¶ 52. The dismissal also denies agency knowledge of any legal authority for providing an "affirmative defense" or age exception to the statute's age requirement. *Id*. Plaintiff has therefore exhausted all administrative remedies. *Id.* ¶ 55.

In March 2026, Plaintiff filed the instant Complaint, asserting three claims: Declaration that Plaintiff is a U.S. Citizen Pursuant to 8 U.S.C. § 1433 (Count I); Violation of the Administrative Procedure Act (Count II); and Due Process Violations (Count III). *Id.* Defendants move to dismiss on the basis that USCIS' denial of the Form N-600 was not arbitrary and capricious, as Plaintiff did not meet the requirements of § 1433; the defense of unawareness is

[1] Plaintiff had already become a permanent resident of the United States in 2019. *Id.* ¶ 45.

inapplicable to § 1433 claims; and there is no due process violation. ECF No. [11]. Plaintiff filed a Response, ECF No. [12], and Defendants filed a Reply, ECF No. [13].

## II. LEGAL STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Additionally, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the allegations satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *See id.* at 556.

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal*, 556 U.S. at 678. However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual

allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

## III. DISCUSSION

### A. The Statutory and Regulatory Scheme

Pursuant to 8 U.S.C. § 1401, a person born outside the United States is a citizen *at birth* if their parents meet certain criteria. *See* 8 U.S.C. § 1401(c), (d), (g). Pursuant to 8 U.S.C. § 1431, a child born outside the United States *automatically* becomes a United States citizen at the moment three conditions are met: (1) the child is born of at least one United States citizen parent, (2) the child is under age 18, and (3) the child is residing in the United States in the custody of a citizen parent pursuant to a lawful admission for permanent residence. 8 U.S.C. § 1431(a).

Individuals born outside the United States to at least one citizen parent who do not meet those criteria for automatic citizenship can still obtain citizenship via 8 U.S.C. § 1433. That statute provides as follows:

> A parent who is a citizen of the United States (or, if the citizen parent has died during the preceding 5 years, a citizen grandparent or citizen legal guardian) *may apply* for naturalization on behalf of a child born outside of the United States who has not acquired citizenship automatically under section 1431 of this title. The Attorney General shall issue a certificate of citizenship to such applicant upon proof, to the satisfaction of the Attorney General, that the following conditions have been fulfilled:
>
> (1) At least one parent (or, at the time of his or her death, was) is a citizen of the United States, whether by birth or naturalization.
>
> (2) The United States citizen parent-
>
> (A) has (or, at the time of his or her death, had) been physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years; or
>
> (B) has (or, at the time of his or her death, had) a citizen parent who has been physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years.
>
> (3) The child is under the age of eighteen years.

> (4) The child is residing outside of the United States in the legal and physical custody of the applicant (or, if the citizen parent is deceased, an individual who does not object to the application).
> (5) The child is temporarily present in the United States pursuant to a lawful admission, and is maintaining such lawful status.

8 U.S.C. § 1433(a) (emphasis added). Such an individual becomes a citizen upon approval of the application and upon taking and subscribing to the oath of allegiance. 8 U.S.C. § 1433(b).

Pursuant to 8 U.S.C. § 1503, an individual within the United states who:

> claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States . . . may institute an action . . . against the head of such department or independent agency for a judgment declaring him to be a national of the United States[.]

8 U.S.C. § 1503(a). "In a § 1503(a) declaratory judgment action, the plaintiff has the burden of proving that he is a U.S. citizen by a preponderance of the evidence." *Martinez v. Sec'y of State*, 652 F. App'x 758, 761 (11th Cir. 2016) (citation omitted). Lawsuits brought under 8 U.S.C. § 1503(a) are not "for judicial review" of an agency's action; instead, they are for *de novo* "judicial determination of the status of the Plaintiff as a United States national." *Richards v. Sec'y of State*, 752 F.2d 1413, 1417 (9th Cir. 1985).

As relevant to the analysis here, the Supreme Court has indicated that interpretations contained in policy statements, and enforcement guidelines "lack the force of law." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). The Foreign Affairs Manual ("FAM"), in particular, has been held to be not binding. *See Rajabi v. Rubio*, No. 7:24-CV-494, 2025 WL 1266961, at *2 n.3 (W.D. Va. May 1, 2025) ("The Foreign Affairs Manual is not binding and 'lack[s] the force of law.'") (quoting *Scales v. Immigration & Naturalization Servs.*, 232 F.3d 1159, 1166 (9th Cir. 2000)); *Sheikhalizadehjahed v. Gaudiosi*, No. 2:24-CV-1136 SCR, 2024 WL 4505648, at *6 (E.D. Cal. Oct. 16, 2024) (noting that the Foreign Affairs Manual is not binding); *Patel v. U.S. Dep't of*

*State*, No. 11-CV-6-WMC, 2013 WL 3989196, at *4 (W.D. Wis. Aug. 2, 2013) ("[T]he Foreign Affairs Manual is an internal guideline that sets forth agency practice and procedures. Because internal guidelines and agency manuals like the Foreign Affairs Manual are not subject to APA rulemaking procedures, they lack the force of law and do not bind agency discretion.") (citing *Vietnam Veterans of America v. Secretary of the Navy*, 843 F.2d 528, 537 (D.C. Cir. 1988)).

**B. Count I – Declaration that Plaintiff is a U.S. Citizen Pursuant to 8 U.S.C. § 1433 (INA § 322)**

Defendants' first argument is that a declaratory judgment is not warranted, as Plaintiff has not proven that he met the requirements under § 1433 before turning 18 years old because he does not show completion of the requisite application and oath process. ECF No. [11] at 6. Moreover, the USCIS dismissal of his Form N-600 denial appeal shows that the provisions of § 1433—which do not allow USCIS to disregard or waive any requirements—were followed. *Id.* at 7. Finally, the doctrine of unawareness found in 8 FAM 307.2-2[2]—upon which Plaintiff relies—pertains to a completely different aspect of citizenship law—namely, the U.S. citizenship retention requirement under former 8 U.S.C. § 1401. *Id*. at 7–8.

Plaintiff responds the he satisfied all "substantive" eligibility requirements of § 1433 prior to turning 18 years old. ECF No. [12] at 2. Furthermore, the doctrine of unawareness found at 8 FAM 307.2-2 provides a basis for eligibility, as it is not limited to retention cases. *Id.* at 4–7.

---

[2] The doctrine or defense of unawareness found in 8 FAM 307.2-2 provides that "[p]otentially expatriating acts performed while a person was unaware of a possible claim to U.S. citizenship do not cause loss of nationality.. . . Under that doctrine, any person wholly unaware of a possible claim to U.S. citizenship should not be held to have ceased to be a citizen by failure to meet the retention requirements." 8 FAM 307.2-2(a).

Defendants reply that Plaintiff overlooks the statutorily-mandated § 1433 application process, improperly makes equitable arguments where none can apply, and attempts to extend the doctrine of unawareness outside of the context to which it is limited. ECF No. [13].

The Court agrees with Defendants. As an initial matter, the text of § 1433 is clear. This statutory provision is unlike §§ 1401 and 1433, which respectively describe citizenship as existing "at birth" or "automatically," regardless of any affirmative action taken by an individual. Instead, the statute plainly states that a citizen parent "may apply" for their child's naturalization. 8 U.S.C. § 1433(a). The child "shall become a citizen" "[u]pon approval of the application . . . and . . . upon taking and subscribing . . . to the oath of allegiance." 8 U.S.C. § 1433(b). The statute does not carve out "substantive" requirements from any other sort of requirements, nor does it contemplate automatic citizenship. Citizenship is expressly predicated on an application and oath process taken while an individual is under age 18. Thus, even if all facts alleged by Plaintiff are true, he still is not eligible for citizenship under § 1433.

The doctrine of unawareness found at 8 FAM 307.2-2 does not save Plaintiff's claim. The defense is limited to "potentially *expatriating* acts" and "failure to meet *retention* requirements" 8 FAM 307.2-2(a) (emphasis added). It repeatedly and explicitly focuses on "retention requirements." *See* 8 FAM 307.2-1 and 8 FAM 307.2-2(b),(c),(e)(2). In this regard, even if the Court were to construe the FAM as having some legal force, 8 FAM 307.2-2 plainly limits its application to cases of automatic or birth citizenship where such citizenship can be lost. It would defy logic to extend its application to cases where citizenship must be affirmatively sought by application process and oath.

Plaintiff's cited cases do not support any other conclusion. Plaintiff cites to *Rogers v. Patokoski*, but that case expressly focuses on an individual with either birth or automatic

citizenship who took otherwise expatriating acts. 271 F.2d 858, 859–61 (9th Cir. 1959). Indeed, that case focuses on "abandon[ing]" citizenship that one already holds. *Id.* at 859. In that sense, the case falls squarely within the "expatriation" and "retention" framework to which 8 FAM 307.2-2 describes itself as applying. Similarly, Plaintiff cites to *Madar v. United States Citizenship & Immigration Services*, but again, that case dealt with an individual to whom citizenship was transmitted "when he was born" who subsequently "fail[ed] to meet the statutory requirements for retention of that citizenship." No. 2:07CV1254, 2018 WL 692096, at *1 (W.D. Pa. Feb. 2, 2018), *aff'd*, 918 F.3d 120 (3d Cir. 2019). The case broadly stands for the proposition that "compliance with the retention requirements is subject to equitable considerations where an individual born abroad is seeking merely to maintain or regain United States citizenship acquired at birth." *Id.* at *4. Indeed, it explicitly rejected the proposition that equitable principles can be used in service of "transmission of citizenship" in the first place. *Id.* at 6 ("[T]he courts have held that the application of the doctrine in a transmission of citizenship setting based on either ignorance or circumstances beyond the control of the individual would be an unauthorized exception to the legislative framework that 'cannot be accommodated in the absence of evidence of a contrary legislative intent.'" (quoting *Tullius v. Albright*, 240 F.3d 1317, 1321 (11th Cir. 2001)).

Thus, the Motion is granted as to Count I, and Count I is dismissed.

**C. Count II – Administrative Procedure Act**

Defendants argue that USCIS' denial of the N-600 was not arbitrary and capricious, as naturalization under § 1433 is not automatic, rather, it depends on completion of the requisite naturalization process. ECF No. [11] at 2. Plaintiff did not meet those requirements. *Id*. Insofar as agency action my only be reversed for a limited number of reasons and those reasons are not found here, USCIS' decision should remain. *Id.* at 6. Plaintiff responds that "rigid enforcement of the

statutory age deadline, despite Plaintiff's substantive eligibility and despite his father's genuine unawareness of INA § 322, resulted in arbitrary and fundamentally unfair deprivation of Plaintiff's citizenship rights." ECF No. [12] at 8. Defendants reply that ignorance of the law does not render a statutory provision arbitrary. ECF No. [13] at 3.

Under the Administrative Procedure Act, "an agency action, finding, or conclusion can be set aside where it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or is 'unsupported by substantial evidence.'" *Mendoza v. Sec'y, Dep't of Homeland Sec.*, 851 F.3d 1348, 1352 (11th Cir. 2017) (citing 5 U.S.C. § 706(2)(A), (E)). Pursuant to the arbitrary and capricious standard, a reviewing court is to consider whether an agency's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Sierra Club v. Johnson*, 436 F.3d 1269, 1273–74 (11th Cir. 2006) (quotation omitted). Put differently, this "narrow form of review" asks a court to set aside agency action as arbitrary and capricious when the agency (1) "has relied on factors which Congress has not intended it to consider," (2) entirely failed to consider an important aspect of the problem, (3) "offered an explanation for its decision that runs counter to the evidence before the agency," or (4) offered an explanation "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Alabama-Tombigbee Rivers Coal. v. Kempthorne*, 477 F.3d 1250, 1254 (11th Cir. 2007).

The Court agrees with Defendants that, even taking Plaintiff's allegations as true, as a matter of law, USCIS' denial of his Form N-600 was not arbitrary and capricious. Section 1433 enumerates the factors Congress intended for USCIS to consider in determining whether to grant an application for citizenship: (1) whether the child has at least on U.S. citizen parent, (2) whether the U.S. citizen parent has been physically present in the United States for at least five years or has

a citizen parent physically present in the United States for at least five years, (3) whether the child is under age 18, (4) whether the child is residing outside the United States in the custody of the applicant parent, and (5) whether the child is temporarily present in the United States pursuant to a lawful admission. 8 U.S.C. § 1433(a). If and only if those criteria are met, the Attorney General "shall issue a certificate of citizenship." *Id*.

Here, USCIS plainly considered precisely those factors. *See* ECF Nos. [1-3]; [1-5]. Indeed, the grounds for denial state the requirements of § 1433 and conclude that Plaintiff does not meet those requirements since he was "presently in the United States and not residing outside the United States." ECF No. [1-5] at 4–5. That reason was sufficient, such that USCIS did not need to address that Plaintiff was making a claim to citizenship under § 1433 after his 18th birthday and after withdrawing a prior N-600. *Id.* at 6. That said, USCIS did note that § 1433 "requires submission of Form N-600K and cannot be filed by any person once the child is over 18 years of age or married." *Id.* at 6.

In the appeal denial, USCIS similarly explained that Plaintiff was not qualified for citizenship under § 1433 because the statute "specifically requires a different application (Form N-600K, Application for Citizenship and Issuance of Certificate Under Section 322)," which Petitioner did not file. ECF No. [1-6] at 4. Even though USCIS did not file the Form N-600K, USCIS "nonetheless also determined that he is not eligible for a Certificate of Citizenship under that section of the Act." *Id*. Indeed, the appeal decision expressly states:

> Even if we were permitted to consider the Applicant's citizenship claim under section 322 of the Act without the required Form N-600K, he unequivocally admits, and the record shows, the Applicant is *over* 18 years old and he resides *in* the United States, contrary to the requisite conditions that must be satisfied as set forth in section 322(3) and (4) of the Act.. . . Thus, he is not eligible for a Certificate of Citizenship under section 322 of the Act on these grounds.
>
> Further, *naturalization* under section 322 of the Act is *not automatic*; rather, a child becomes a U.S. citizen upon completing the requisite naturalization process

> and taking the oath of allegiance (unless such requirement is waived).. . . Here the Applicant does not claim, and the record does not show, that his U.S. citizen father initiated a citizenship proceeding for him by filing the requisite Form N-600K and the Applicant subsequently completed the naturalization process, including taking the oath of allegiance, at any time before his 18th birthday (or such requirement was waived). Therefore, even if his U.S. citizen father had filed the required form as the Applicant was residing outside the United States in his father's legal and physical custody (as also required under section 322(4) of the Act) at some point prior to age 18, the Applicant is now well over 18 years old and consequently ineligible for naturalization under section 322 of the Act.

*Id*. USCIS specifically discussed the inapplicability of the unawareness defense, explaining that it "pertain[s] to issues specifically involving expatriation and loss of U.S. nationality[.]" *Id.* at 5. It does not provide an "affirmative defense" or exception to the requirements of § 1433. *Id*.

The Court finds that USCIS plainly relied only on the factors prescribed by Congress. It considered the unawareness defense proffered by Plaintiff and found it inapplicable, a conclusion that is legally correct, as the Court addressed above. Its decision was squarely consistent with the evidence before it, and its explanation was patently plausible. In this regard, Plaintiff fails to state a claim for arbitrary and capricious agency action.[3]

Thus, the Motion is granted as to Count II, and Count II is dismissed.

**D. Count III – Due Process Violation**

Defendants' final argument is that there is no due process violation, as there is no constitutional right to citizenship for aliens. ECF No. [11] at 8. Moreover, § 1433 is premised on a rational basis—namely, that there is a distinction between those below age 18 (i.e., minors) and

[3] Plaintiff contends that USCIS applied the incorrect legal standard "[b]y focusing on Plaintiff's present residence rather than his qualifying residence abroad before age eighteen" and failed to consider the relevant factors by not considering the affidavit from Plaintiff's father attesting to his unawareness. ECF No. [1] ¶¶ 75, 76. Plaintiff further argues USCIS "acted in excess of its statutory authority by reading [§ 1433] as imposing an absolute bar without regard to defenses recognized under the Foreign Affairs Manual guidance." *Id.* ¶ 76. For the reasons discussed, none of those arguments is availing. USCIS applied the correct legal standard found in the plain text of § 1433, properly disregarded Plaintiff's father's affidavit as irrelevant, and correctly concluded that the FAM is not binding here.

those above age 18 (i.e., adults). *Id.* at 8–9. Plaintiff responds that "rigid enforcement of the statutory age deadline, despite Plaintiff's substantive eligibility and despite his father's genuine unawareness of INA § 322, resulted in . . . fundamentally unfair deprivation of Plaintiff's citizenship rights." ECF No. [12] at 8. Plaintiff rejects differential treatment of similarly-situated siblings based solely on when a parent became aware of a statutory citizenship mechanism. *Id*. Defendants reply that unawareness of the law does not render a statutory provision fundamentally unfair. ECF No. [13] at 3. Moreover, there is no protected class in children whose parents are ignorant of the law. *Id*.

To establish a due process violation, a plaintiff "must show that he was deprived of a constitutionally protected liberty interest and that he suffered substantial prejudice." *United States v. Gkanios*, 536 F. App'x 854, 858 (11th Cir. 2013) (citation omitted). In the context of substantive due process, a plaintiff may allege the deprivation of a right "implicit in the concept of ordered liberty." *Lewis v. Brown*, 409 F.3d 1271, 1272 (11th Cir. 2005) (citations and internal quotations omitted). Alternatively, a plaintiff may allege the deprivation of a non-fundamental right through "pretextual, arbitrary, and capricious" means. *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1563 (11th Cir.1995).

The concept of a right to naturalization has been thoroughly explored and rejected:

> Although aliens are entitled to due process protection, Congress has broad authority in setting requirements for naturalization.. . . [T]he [Supreme] Court stated, 'Congress is not trammeled, and it may grant or withhold the privilege of naturalization upon any grounds or without any reason, as it sees fit.' Similar language occurs in the Court's later cases. 'The opportunity to become a citizen of the United States is said to be merely a privilege, and not a right . . .. The Constitution does not confer upon aliens the right to naturalization . . .. There is, of course, no 'right to naturalization unless all statutory requirements are complied with.'"

*Trujillo-Hernandez v. Farrell*, 503 F.2d 954, 954–55 (5th Cir. 1974) (alterations added and internal citations omitted).[4] Indeed, it is well-established that "an alien has no constitutional right to citizenship which is a privilege conferred as a matter of grace by Congress[.]" *Hein v. U.S. Immigration & Naturalization Serv.*, 456 F.2d 1239, 1240 (5th Cir. 1972); *see also United States v. Macintosh*, 283 U.S. 605, 615 (1931), *overruled on other grounds*, *Girouard v. United States*, 328 U.S. 61 (1946) (noting that "[n]aturalization is a privilege, to be given, qualified or withheld as Congress may determine, and which the alien may claim as of right only upon compliance with the terms which Congress imposes.").

Binding case law disposes of Plaintiff's substantive due process claim. Plaintiff has no "right" to naturalization in the absence of compliance with all statutory requirements. Plaintiff did not comply with the statutory requirements, including the required application and oath process during his childhood. In that regard, even based on the facts as presented by Plaintiff, no substantive due process claim exists—that is, because Plaintiff cannot point to a "right" to which he was denied, he has no substantive due process claim. Similarly, as discussed above, even if some right could be discerned, Plaintiff has not properly alleged that he was deprived of it by arbitrary or capricious means—that USCIS' actions "'can be characterized as arbitrary or conscience shocking in a constitutional sense.'" *Maddox v. Stephens*, 727 F.3d 1109, 1119 (11th Cir. 2013) (quoting *Waddell v. Hendry Cnty. Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003)). Instead, as the Court discussed above, Plaintiff's Complaint makes clear that USCIS' decision-making was constrained to the proper factors, considerate of all relevant information,

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

well-explained in terms of the information before the agency, and patently plausible. Thus, Plaintiff's substantive due process claim necessarily fails.

Plaintiff's procedural due process claim fares no better. It is true that Plaintiff "is entitled to procedural due process in the processing of his petition for naturalization, as a guard against administrative arbitrariness." *Trujillo-Hernandez*, 503 F.2d 954, 955 (5th Cir. 1974). But to bring a procedural due process claim, a plaintiff must allege "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Howard v. Coonrod*, 134 F.4th 1136, 1149 (11th Cir. 2025) (quoting *Resnick v. KrunchCash, LLC*, 34 F.4th 1028, 1035 (11th Cir. 2022)). And as the Court has already noted above, Plaintiff has no protected interest in obtaining citizenship absent fulfilling the statutory requirements, which Plaintiff admittedly did not do. Thus, the procedures afforded were plainly adequate to prevent "the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978), as no life, liberty, or property interest was implicated.

Therefore, the Motion is granted as to Count III, and Count III is dismissed.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion**, ECF No. [11]**, is **GRANTED**.
2. The above-styled case is **DISMISSED WITH PREJUDICE.**
3. To the extent not otherwise disposed of, all pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.
4. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 18, 2026.



**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record